OTIS W. MERRIAM & another *vs.* THE PRESIDENT, DIRECTORS AND COMPAN'. OF THE GRANITE BANK.

A promissory note, indorsed in blank, was accidentally left, by the owner, in a broker's office, and the broker, without himself indorsing it, deposited it in a bank to whom he was indebted for money lent, payable on demand, and to whom he was accustomed to give, as collateral security for such loans, his own memorandum checks payable on demand, or indorsed notes. *Held*, that the bank could not hold the note as against the rightful owner, without showing that they took it in the usual course of business, or as security for a specific debt.

REPLEVIN of a promissory note for $1,408.05, dated May 3d 1854, signed by Brett & Company, payable to their own order in six months, and indorsed by them and by the plaintiffs. Writ dated November 3d 1854. Answer, property in the defendants, and that the defendants took the note so indorsed, before it was due, in the regular course of their business, and for a valuable consideration. Trial in this court before *Merrick*, J., who made this report thereof:

" It appeared that the plaintiffs were furniture dealers in the city of Boston; that they received from Brett & Company the note in question, in payment for certain parcels of furniture sold to them; that the plaintiffs, being thus the owners and having possession of the note, put the same, about the 1st of July 1854, into the hands of Weston, one of their clerks, to be deposited by him for them in the Exchange Bank in Boston, for collection; that Weston, having received the note for that purpose, started to go to the Exchange Bank; but having business in his way there at the office of Willis & Company, who were then doing business as brokers in State Street, he first stopped at that place, and transacted certain business with them, and, while there, accidentally placed the note on their counter, and afterwards went away, leaving it there. He then went to the Exchange Bank, and from thence returned to the plaintiffs' place of business. He there first discovered, upon reflecting upon what he had done, that he had not deposited the note in the bank, and supposed that he had by mistake left it at the

office of Willis & Company. Soon after this he started to go there to make inquiries about it, and on his way met Davis, one of the partners of the firm of Willis & Company, and was told by him that he had found the note on the counter and had taken care of it, and would deliver it to Weston whenever he should call for it. In a day or two afterwards Weston called at the office for the note; but Davis, being busy, could not then lay his hand upon it, and requested Weston to call for it on another day. The firm of Willis & Company failed soon after this, namely, on Saturday, the 8th of July. On the Monday following, Weston called again for the note, but did not obtain it. Davis testified that after he found the note, and after Weston called for it the first time, he (Davis) put the note in a wrapper, and wrote the plaintiffs' name upon it.

" Very soon after the failure of Willis & Company, the plaintiffs learnt that in some way the note had been passed over to the Granite Bank. There was no evidence offered by either party, showing the precise time or purpose for which the note was passed to the Granite Bank, or by whom it was done. But it did appear, upon the examination of the books and papers of the bank, on or about the 25th of July 1854, by Alpheus Hardy, who succeeded Henry M. Holbrook as president of the bank, that Willis & Company were then indebted to the bank for what was called a demand loan, in the sum of twenty six thousand dollars, for which sum the bank held several memorandum checks of Willis & Company, and that the bank then also had, in a trunk in the bank, in which the collateral notes and securities for demand loans were usually kept, a package of notes, amongst which was the note in controversy, inclosed in a wrapper labelled or indorsed in a way to indicate that the notes were held as collateral security for the indebtedness of Willis & Company on their demand loan.

" Holbrook, the former president of the bank, being called as a witness for the defendants, testified that he was president of the bank from February 1852 to the time of the failure of Willis & Company on the 8th of July 1854; that during the whole of that time he had made demand loans for the bank to Willis

& Company, taking, whenever he made such loans, the memorandum checks of Willis & Company, payable on demand, and indorsed promissory notes, passed by Willis & Company to the bank as collateral security for the same ; that he was well acquainted with Willis & Company and with their manner of doing business ; and that from such knowledge of Willis & Company and of their business, and also from what Willis frequently told him at the times when the demand loans were made, he always supposed that the said indorsed promissory notes, which Willis & Company thus passed over to the Granite Bank as collateral security, were not notes which they had discounted or purchased and paid for in full, but were notes on which Willis & Company had made partial advances, and which they held as collateral security for the loans so by them advanced on those notes severally ; and that he also supposed that under such circumstances Willis & Company had a right to transfer and assign those notes to the bank as collateral security for the indebtedness by them incurred on demand loans to them by the bank, and that the bank had a right to receive and hold such notes for that purpose.

" Holbrook had no recollection of the particular note now in question, nor of any transaction by virtue of which the bank acquired possession of it ; but from the place where it was found on the files, he had no doubt but that it was received as collateral security for a loan when made.

" It was conceded that Willis & Company never made any advances upon this note, or in any way acquired any title to it ; and that the plaintiffs never themselves, or by any agent of theirs, sold, assigned or transferred it, or any interest in it, to anybody.

" Upon the foregoing facts and circumstances, the court having intimated to the counsel that the court would instruct the jury, that if the bank took the said note from Willis & Company as collateral security for their indebtedness on the demand loan made to them ; and if the circumstances under which they took it were not in the usual course of business, but were of such a suspicious character as to cast a shade upon the transac-

tion, and necessarily to put them on inquiry as to the right of Willis & Company to the note, and their right to sell, dispose of and pledge it; the bank, having so received it, could not maintain their title to the note against the plaintiffs, who were the true and lawful owners of it; and further, that the facts testified of, as before recited, by Holbrook, were in themselves sufficient so to. put the bank upon its guard, and upon the inquiry aforesaid ; it was thereupon agreed that a verdict should be taken for the plaintiffs, and the proposed instructions should be reserved for the consideration of the whole court; and that if, in the opinion of the whole court, the proposed instructions were correct, and such as were proper to have been given to the jury, then judgment should be rendered for the plaintiffs on the verdict; otherwise, it should be set aside, and a new trial ordered.   A verdict was thereupon accordingly taken for the plaintiffs."

*C. T. Russell,* for the defendants.   The defendants received this negotiable note before it was due, duly indorsed, and in the ordinary course of business, and were therefore entitled to hold it against all parties, although it was transferred to them as security for past or present indebtedness.   *Wheeler* v. *Guild,* 20 Pick. 545.   *Blanchard* v. *Stevens,* 3 Cush. 162.   If the defendants' president acted without due care, still such negligence, unless so gross as to amount to bad faith, does not affect the defendants' title.   *Miller* v. *Race,* 1 Bur. 452.   *Lawson* v. *Weston,* 4 Esp. R. 56.   *King* v. *Milsom,* 2 Campb. 5.   *Gill* v. *Cubitt,* 3 B. & C. 466.   *Beckwith* v. *Corrall,* 2 Car. & P. 261.   *Crook* v. *Jadis,* 5 B. & Ad. 909.   *Backhouse* v. *Harrison,* 5 B. & Ad. 1098. *Foster* v. *Pearson,* 1 C., M. & R. 849.   *Goodman* v. *Harvey,* 4 Ad. & El. 870.   *Uther* v. *Rich,* 2 P. & Dav. 579.   *Raphael* v. *Bank of England,* 17 C. B. 161.   *Carlon* v. *Ireland,* 5 El. & Bl. 765.   *Bank of Bengal* v. *Macleod,* 7 Moore P. C. 35.   *Bank of Bengal* v. *Fagan,* 7 Moore P. C. 61, 76.   *Ayer* v. *Hutchins,* 4 Mass. 370.   *Thurston* v. *M'Kown,* 6 Mass. 428.   *Jarvis* v. *Rogers,* 13 Mass. 105.   *Cone* v. *Baldwin,* 12 Pick. 545.   *Goddard* v. *Lyman,* 14 Pick. 268.   *Wheeler* v. *Guild,* 20 Pick. 545. *Whiton* v. *Old Colony Ins, Co.* 2 Met. 6.   *Mechanics' Bank* v.

22 *

*Merchants' Bank,* 6 Met. 13.    *Stoddard* v. *Kimball,* 4 Cush. 604, and 6 Cush. 469.    *Swift* v. *Tyson,* 16 Pet. 14.    *Stalker* v. *M'Donald,* 6 Hill, 93.    *Youngs* v. *Lee,* 18 Barb. 187.    *Gwyn* v. *Lee,* 1 Maryland Ch. 445.    *Greneaux* v. *Wheeler,* 6 Tex. 515. *Matthews* v. *Poythress,* 4 Georgia, 287.    *Beltzhoover* v. *Black-stock,* 3 Watts, 20.    *Bisbing* v. *Graham,* 14 Penn. State R. 14. *Sandford* v. *Norton,* 14 Verm. 228.    *Atkinson* v. *Brooks,* 26 Verm. 569.    *Tarbell* v. *Sturtevant,* 26 Verm. 513.

The ruling in this case assumes that Willis & Company had no right to pledge notes pledged to them ; which may be questioned. 1 Parsons on Con. 600. Story on Bailments, § 332. *Collins* v. *Martin,* 1 Bos. & Pul. 648.    *Jarvis* v. *Rogers,* 13 Mass. 105.    *Tarbell* v. *Sturtevant,* 26 Verm. 513.

*H. F. Durant,* for the plaintiffs, cited *Cone* v. *Baldwin,* 12 Pick. 546 ; *Thompson* v. *Hale,* 6 Pick. 262 ; *Gill* v. *Cubitt,* 3 B. & C. 466 ; *Union Bank* v. *Knapp,* 3 Pick. 96 ; Story on Notes, § 197 ; *Whitaker* v. *Sumner,* 20 Pick. 404 ; *Jarvis* v. *Rogers,* 15 Mass. 396 ; *Garlick* v. *James,* 12 Johns. 146 ; *Cortelyou* v. *Lansing,* 2 Caines Cas. 200 ; *Wilson* v. *Little,* 2 Comst. 443.

SHAW, C. J.* This being an action of replevin for a promissory note, the specific paper writing, with the valuable contract upon it, as a visible and tangible object, in the nature of a chattel, capable of manual possession and delivery, the single question is, which of these parties has the property in this note, with the right of present possession. The plaintiffs, having taken the burden of proof, have proved both good title and actual possession of the note; and they have shown, beyond all doubt, that, having made no transfer of title, they lost it out of their possession, by means as purely accidental as if they had dropped it in the street, where it had been picked up by a stranger.

Then the question is, whether the defendants, a bank constituted for the purposes of dealing in money and money securities, have taken this note under such circumstances that the true owners cannot question their title. The ground relied on by the defendants is, that this had all the appearance of a busi-

---

* DEWEY, J. did not sit in this case.

ness note given for value by Brett & Company, payable to their own order, and by them indorsed in blank, so as to pass by delivery, and actually in the custody of Willis & Company, and by them produced and delivered to the bank for a valuable consideration.

The rule of law, designed to afford ample protection to the free currency and circulation to negotiable securities, transferable by indorsement or by delivery, during the time they have to run, having no indication of want of title on the face is, and we think ought to be, maintained with great strictness, in favor of persons taking them *bona fide*, in the due course of business, without notice actual or constructive of any want of good title on the part of the party negotiating them. *Wheeler* v. *Guild*, 20 Pick. 545.

But this rule is to be taken with a strict observance of the qualification, that the negotiable security be taken in the due course of business, without notice, or reasonable cause to suspect, that the party from whom it is taken has not the full title, which the possession of the security and the names borne upon it naturally import.

Had this note, with or without the indorsement of Willis & Company, been discounted by the bank, making it their own upon the credit of the parties to it, simply deducting the discount, it would have presented a very different question.

It is not easy to prescribe a general rule, as to what shall be the common course of business. It must depend much upon the circumstances of each particular case. In the present case, upon a review of the evidence, of which there was no conflict, the court are of opinion that the directions which the judge, at the trial, proposed to give to the jury, as stated to the counsel, were correct, and that the jury would have been well warranted in finding that the bank did not take the note in the ordinary course, under such circumstances, as to place themselves on the high ground of holders for value, without notice, and without anything to put them on inquiry.

It is true they had possession of the note so indorsed by the maker, that, like a note payable to bearer, the legal title would

pass by delivery. But it was not discounted, or purchased, or received for the full amount on the single credit of the promisor. If never paid, it would not have been the loss of the bank, unless their principal debtor, to whom the loan was made, also failed. It was not indorsed by the borrower, or otherwise warranted by him that he had a good and unimpeachable title, and was therefore in this respect like a note indorsed "without recourse," which is not the usual course of transferring a security indorsed in blank.

We do not mean to say that the mere circumstance of taking such a note as collateral security would of itself be sufficient, when a new credit is given to a borrower merely on the credit of such security, and under such circumstances as would war rant a belief that such credit would not have been given the borrower without security. But the evidence in the present case does not show that the bank held the note in question as security for any particular debt, which they could identify. The evidence respecting their course of dealing leads to the conclusion, that where a temporary loan, or loan to be repaid on demand, was made, Willis & Company usually brought in notes to an equal or larger amount and deposited them as secu rity. But as the notes had time to run, the loan might be repaid forthwith, being on demand, the notes were rather security to the bank for all such loans or any balance thereupon than for the particular loan then made. But the bank cannot now show any note or check in particular, for the security of which the note in question was given; nor is it shown, except from such general course of dealing, that any advance was made when this note was deposited.

But further, it appears from the testimony of the president, who conducted these negotiations, as agent for the bank, that, according to the above mentioned course of dealing, the bank did not take these notes under a belief or understanding that Willis & Company had a perfect and beneficial title in full to the notes, which they were accustomed to take as collateral; but that, as Willis & Company had the possession, which is *prima facie* a legal title, to securities payable to bearer, or to indorsee

with his blank indorsement, they could, by their delivery, pass them as security. We think the fair result of this evidence is, that if, according to the usual course of dealing, this note was handed to the bank at the same time that a demand loan was made, the note was taken not solely or principally on its own credit, but on the credit of Willis & Company to this extent, that they had a legal title to the note, and a right to pass it to them as such security. They might well believe — the possession of the note and its condition, as apparently transferable by delivery, warranted them in believing — that Willis & Company had a good title; and they were chargeable with no want of good faith in taking it on that belief. Still the taking was under such circumstances as to put them upon their guard, to inquire into the title of Willis & Company, and take only such title as Willis & Company could give, as in case of assignment. When, therefore, it appears that, although this note was in such form that it was transferable by delivery by the true owner, yet that in point of fact it never had been delivered by the plaintiffs, the true owners, to Willis & Company, or any other person, the *prima facie* evidence, arising from the possession of Willis & Company, is effectually rebutted, they had no title, and when they passed it to the bank, by mistake or otherwise, no title passed to them; and taking into consideration all the circumstances under which the defendants came into possession of the note, they are not such indorsers for value and without notice, that they can hold it against the well established title of the plain-tiffs. *Judgment on the verdict for the plaintiff.*